IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Jimmie Lucas and Clarence Wilson | ) | C/A No. 3:21-cv-02328-SAL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| United Parcel Service, Inc., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Defendant United Parcel Service's Motion to Dismiss [ECF No. 15]. For the reasons set forth in detail below, the court **GRANTS** Defendant's motion.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

In this action, Jimmie Lucas and Clarence Wilson ("Plaintiffs") seek to recover damages from United Parcel Service ("Defendant") for unpaid wages. Defendant employs both Plaintiffs as drivers and has done so for decades. [ECF No. 1-1, ¶¶ 7, 8]. Plaintiffs work at a facility located at 124 Creekside Road, West Columbia, SC 29172. *Id.* ¶ 9. As union members of the International Brotherhood of Teamsters, Local Chapter 509, Plaintiffs are subject to a collective-bargaining agreement ("CBA") that governs the terms of their employment, including grievance procedures and compensation. *Id.* ¶¶ 13–15; *see also* [ECF Nos. 15-3, 15-4, 15-5]. Plaintiff Lucas has served as the union shop steward for almost thirty-four years. [ECF No. 1-1, ¶ 13].

---

[1] Plaintiffs' Amended Complaint contains errors with respect to the paragraph numbering. The numbering goes from 1 to 45 and then, instead of continuing to 46, goes from 25 to 34. *See generally* [ECF No. 1-1]. For the sake of clarity, the court will cite to the paragraph number used in the Amended Complaint but will also provide a page number for the incorrectly numbered sections.

Plaintiffs allege Defendant fails to pay its drivers at the West Columbia location for all of the hours they work each day. *Id.* ⁋ 9. Specifically, Plaintiffs claim Defendant neglects to pay them for equipment preparation which entails both "start work time" and "conclusion of work time." *Id.* ⁋ 10. Start work time includes the first half hour of each workday and entails building and pre-staging the loads that the drivers deliver. *Id.* Conclusion of work time includes the time it takes to return to the facility and to complete and turn in the mileage sheet to the dispatch office. *Id.* Defendant requires Plaintiffs to punch in with a timeclock and perform these mandatory duties, despite allegedly not paying Plaintiffs for this time. *Id.* ⁋ 11.

Plaintiffs sought to correct this pay discrepancy through the mandatory grievance procedures outlined in the CBA, including filing more than 83 grievances apiece. *Id.* ⁋⁋ 14, 15. According to Plaintiffs, they exhausted their rights under their CBA "including but not limited to a deadlocked national panel between March 9-12, 2020.". *Id.* ⁋ 14. After the national panel deadlocked, Plaintiffs' Union submitted their grievances to arbitration as provided in the CBA. [ECF No. 15-6]. On November 10, 2020, the arbitrator ruled against the Union and found that "[i]n the absence of a side agreement, [Defendant's] management was free to apply the Article 43 Guidelines [of the CBA] at the Columbia Air Hub." *Id.* at p. 10.

After filing one of their grievances on February 26, 2019, labor managers told Plaintiffs they were being paid correctly and their grievance was moot. *Id.* ⁋ 16. Plaintiffs admit "[f]or a brief time around that time" Defendant correctly paid them for all of their time but has since stopped. *Id.* This unpaid compensation allegedly totals approximately $12,929.60 for Plaintiff Lucas and $15,220.55 for Plaintiff Wilson. *Id.* ⁋ 17.

Plaintiffs both allege repeated instances of threats made by management and Defendant's representatives following their grievances. *Id.* ⁋ 18. They claim they suffered retaliatory conduct

including suspensions and a "working termination." *Id.* ¶¶ 20–26. Specifically, on the morning of May 18, 2021, one of their supervisors, Haven Holmes, called them into the office and warned them to stop including time entries on their mileage sheets for "time they were working on the clock." *Id.* ¶ 21. Plaintiffs allege that Jimmy Forback, the Feeder Manager, instructed Holmes to give them that warning. *Id.* A few days after that discussion, Plaintiffs received warning letters in the mail regarding their time entries. *Id.* The morning after their initial meeting with Holmes, Plaintiffs were again called into his office and, at the behest of Forback, were issued a 3-day suspension. *Id.* ¶ 22. This suspension did not take effect immediately, and its implementation was "to be determined." *Id*.

Exactly one week later, on May 25, 2021, the Plaintiffs were told they were terminated. *Id.* ¶ 23. However, like their suspension, this termination did not take effect immediately and its implementation "was to be determined." *Id.* To avoid termination for insubordination, Plaintiffs agreed to cease submitting the disputed time, but they continued to keep their own personal records. *Id.* Forback informed Plaintiffs "if [they] followed instructions and stopped putting the entries of when they were working on the sheets then everything would be just fine." *Id.* ¶ 24. Plaintiffs claim they were closely watched and feared termination, resulting in emotional distress which impacts their professional and personal lives. *Id.* ¶¶ 24, 26.

On July 7, 2021, Plaintiffs filed this action in the Court of Common Pleas Eleventh Judicial Circuit in Lexington County, South Carolina. [ECF No. 1-1]. Plaintiffs brought five claims—two federal claims brought under the Fair Labor Standards Act ("FLSA"), one state law statutory claim brought under the South Carolina Payment of Wages Act ("SCPWA"), and two state common law theories of promissory estoppel and quantum meruit. *Id.* Following service, Defendant timely removed the action to this court on July 28, 2021. [ECF No. 1]. Less than a month later on August

25, 2021, Defendant filed its Answer to Plaintiffs' Amended Complaint. [ECF No. 7]. Defendant

then filed its Motion to Dismiss on November 9, 2021. [ECF No. 15]. Plaintiffs responded on

November 17, 2021, ECF No. 16, and Defendant filed a Reply on December 13, 2021, ECF No.

19. Therefore, the matter is fully briefed and ripe for review.

## LEGAL STANDARD

### I. Standard Under Rule 12(b)(1)

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) require the court to

determine whether it has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1);

*see Hoblick v. United States*, 526 F. Supp. 3d 130, 132 (D.S.C. 2021) (citing *Arbaugh v. Y & H

Corp.*, 546 U.S. 500, 507 (2006)). "When a Rule 12(b)(1) motion challenge is raised to the factual

basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the

plaintiff." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th

Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Motions to dismiss for

lack of subject matter jurisdiction "can arise in two ways: (1) when the moving party maintains

that the complaint 'fails to allege facts upon which subject matter jurisdiction can be based' or (2)

when the moving party maintains that the jurisdictional allegations within the complaint are not

true." *McElveen v. Cincinnati Ins. Co.*, 422 F. Supp. 3d 1068, 1073 (D.S.C. 2019) (quoting *Adams*,

697 F.2d at 1219). Courts analyze the first type of dismissal motion with a standard similar to that

of a motion made under Federal Rule 12(b)(6) and analyze the second type of dismissal motion

with a standard similar to that of a summary judgment motion. *See Kerns v. United States*, 585

F.3d 187, 193 (4th Cir. 2009).

## II. Standard Under Rule 12(c) and 12(b)(6)[2]

Federal Rule of Civil Procedure 12(c) provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Ultimately, "a defendant may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery for the plaintiff." *BET Plant Servs., Inc. v. W.D. Robinson Elec. Co.,* 941 F. Supp. 54, 55 (D.S.C. 1996). "[A] Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. IRS,* 361 F. App'x 527, 529 (4th Cir. 2010); *see Burbach Broad. Co. v. Elkins Radio,* 278 F.3d 401, 405 (4th Cir. 2002).

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in order to survive a dismissal motion, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 555. In reviewing the complaint, the court accepts all well-pleaded allegations as true and construes the facts and

---

[2] Defendant purports to bring its dismissal motion pursuant to Rule 12(b)(6). Federal Rule 12(b)(6) provides a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). However, after the pleadings close, parties may move to dismiss for a failure to state a claim under Rule 12(c). Fed. R. Civ. P. 12(c); *see* Fed. R. Civ. P. 12(h)(2)(B) (providing parties can move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(c)). Defendant filed its Answer, ECF No. 7, on August 25, 2021, and then moved to dismiss under Rule 12(b)(6), ECF No. 15, almost three months later on November 9, 2021. Because the pleadings have closed, the court considers Defendant's dismissal motion under Rule 12(c), which is governed by an identical standard. *See Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x 527, 529 (4th Cir. 2010).

reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 662.

## DISCUSSION

The court begins by addressing Defendant's jurisdictional argument before turning to examine whether Plaintiffs state plausible FLSA claims upon which relief may be granted. Last, the court addresses Plaintiffs' state law claims.

### I. Defendant's Motion to Dismiss Under Rule 12(b)(1)

In its dismissal motion, Defendant argues the court lacks jurisdiction over Plaintiffs' claims because they fall exclusively under federal labor law and mandatory grievance procedures govern the CBA's interpretation. [ECF No. 15-1, p. 13]. Defendant contends Plaintiffs' claims were already addressed during prior arbitration, and the prior litigation precludes jurisdiction in this court. At issue before the arbitration panel was whether, under the terms of the CBA, start work and finish work is separately compensable or is covered by the mileage rate Plaintiffs are paid. [ECF No. 15-6, p. 4].

Here, however, Plaintiffs bring distinct statutory claims under FLSA that have not been previously arbitrated. Plaintiffs heavily rely on the Supreme Court's decision in *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728 (1981), to support its position that prior arbitration of a CBA does not preclude an employee from later bringing statutory claims under FLSA. There, the Supreme Court held the plaintiffs' prior submission of their grievance to the contractually required dispute-resolution process did not bar their statutory claims because "Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in

court . . . because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum[.]" *Id.* at 745. If the parties had agreed in the CBA to arbitrate statutory claims, then Defendant's jurisdictional argument would have merit. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 263 (2009) (discussing the limited extent of *Barrentine's* holding).

Despite the similar nature of the claims put forth in the arbitration and this case, the court finds that it has jurisdiction and **DENIES** Defendant's dismissal motion to the extent it requires dismissal under Rule 12(b)(1). The court agrees that Plaintiffs can assert statutory claims under FLSA. The question then becomes: Have Plaintiffs stated plausible FLSA claims upon which relief can be granted?

## II. Defendant's Motion for Judgment on the Pleadings Under Rule 12(c)

Having found that it has jurisdiction to adjudicate Plaintiffs' claims, the court must next determine whether Plaintiffs state plausible claims upon which relief may be granted. The court first addresses the scope of its consideration.

### A. What Evidence May the Court Consider?

Defendant attached nine documents to its dismissal motion—one declaration and eight supporting exhibits (Exhibits A through H). *See* [ECF Nos. 15-2, 15-3, 15-4, 15-5, 15-6, 15-7, 15-8, 15-9, 15-10]. These documents include an excerpt of the CBA (Exhibit A), an excerpt of the Supplemental Agreement to the CBA (Exhibit B), Article 43 outlining pay for premium services of UPS Mileage Layover, City Pair and Sleeper Team Drivers (Exhibit C), the Arbitration Decision (Exhibit D), Plaintiff Lucas' NLRB Charge (Exhibit E), the Charge's dismissal (Exhibit F), the Denial of Appeal of the Charge dismissal (Exhibit G), and excerpts from the arbitration transcript (Exhibit H).

In their Response, Plaintiffs do not challenge Defendant's claim they intentionally avoided mentioning any of these documents in an attempt to avoid dismissal. Instead, Plaintiffs merely argue "[t]he Court should not consider any of the exhibits attached to Defendant's Memorandum, and Defendant's arguments that accompany such exhibits, at this stage of the proceedings." [ECF No. 16, p. 7]. According to Plaintiffs, considering such documents would convert Defendant's dismissal motion to a motion for summary judgment, and such conversion is inappropriate because the parties have not had adequate time for discovery. *Id.* For a number of reasons, the court disagrees.

There are certain circumstances where courts may properly consider extrinsic evidence at the dismissal stage. Documents attached to a pleading are considered a part of that pleading for all purposes. Fed. R. Civ. P. 10(c); *see also Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (asserting courts "may also consider Documents attached to the complaint . . ., as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic"); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (deciding the same). Courts may consider documents not included in a complaint but attached to a motion to dismiss "when the document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge [the document's] authenticity.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

The rationale behind this exception is when plaintiffs have "actual notice of all the information in the movant's papers and [have] relied upon these documents in framing the complaint the necessity of translating a [dismissal motion] into one under Rule 56 is largely dissipated." *Cortec*

*Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Particularly, when plaintiffs fail "to include matters of which as pleaders they had notice and which were integral to their claim," such a failure "may not serve as a means of forestalling the district court's decision on the motion." *Id.* at 44; *see also Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 427 (S.D.N.Y. 2011) ("A plaintiff cannot avoid the Court's consideration of a document simply by failing to explicitly reference it." (citing *RBS Holdings, Inc. v. Wells Fargo Century, Inc.*, 485 F. Supp. 2d 472, 477 (S.D.N.Y. 2007)) (cleaned up)). If a court were to forego consideration of a relied upon, but not explicitly included document "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196 (citing *Goodwin v. Elkins & Co.*, 730 F.2d 99, 113 (3d Cir.), *cert denied*, 469 U.S. 831 (1984)). Accordingly, if Plaintiffs relied on any of the documents attached to Defendant's dismissal motion, and those documents are integral to their claims, the court may properly consider them so long as they are authentic.

In their Amended Complaint, Plaintiffs acknowledge they are members of the International Brotherhood of Teamsters, Local Chapter 509 and they are subject to its collective-bargaining agreement with Defendant. [ECF No. 1-1, ¶¶ 13, 14]. Seeking corrections to their allegedly incorrect pay, Plaintiffs filed more than 83 separate grievances. *Id.* ¶ 15. Further, Plaintiffs allege they "have exhausted their rights under their collective bargaining agreement, ***including but not limited to*** a deadlocked national panel between March 9-12, 2020." *Id.* ¶ 14 (emphasis added).

These two claims—that Plaintiffs participated in a deadlocked national panel ***and*** exhausted their rights under the CBA—are significant because they show Plaintiffs' reliance on the documents constituting the CBA (Exhibits A, B, and C) and prior arbitration which resolved the

parties' contractual dispute (Exhibits D and H). At this stage of the litigation, the court is required to accept both statements as true. Considering the CBA provides a process through which either party may bring a grievance to arbitration following a deadlocked national panel, and the Plaintiffs' claim they exhausted their rights under the CBA, the court finds they indicate their submission of their grievances to arbitration, thus successfully exhausting their rights under the CBA. *See generally* [ECF No. 15-4]. By providing they unsuccessfully exhausted their rights under the CBA, Plaintiffs suggest judicial resolution is the only means left to vindicate their claims. This necessarily indicates their reliance on the failed grievance process, including the prior arbitration, when crafting their Amended Complaint.

Furthermore, the court finds the CBA and the subsequent arbitration are integral to Plaintiffs' claims. Plaintiffs filed their union grievances "seeking correct wage payment" under the CBA. [ECF No. 1-1, ¶ 15]. Now, Plaintiffs seek correct wage payment for allegedly unpaid wages under FLSA. *Id.* ¶¶ 28–35. Even though the nature of the claims differs (contractual versus statutory), the underlying basis is the same—Defendant is allegedly underpaying its drivers. Consequently, the document setting Plaintiffs' compensation (the CBA) and its subsequent interpretation in arbitration is surely integral to Plaintiffs' claims.[3]

Last, the Plaintiffs do not challenge the authenticity of these documents nor deny Defendant's accusation they intentionally omitted them in their Amended Complaint to mislead the court. Accordingly, the court determines that it may consider Exhibits A, B, C, D, and H because Plaintiffs relied on them in their Amended Complaint, they are integral to their unpaid overtime

---

[3] Similarly, because Plaintiffs base their retaliation claim on their actions seeking correct wage payment through the grievance procedure outlined in the CBA, the court finds that it may consider the CBA and arbitration documents provided by Defendant when addressing that claim.

wages and retaliation claims, they had notice of the documents as parties to the grievance procedures, and neither party challenges the authenticity of the Exhibits.[4] In contrast, Plaintiffs fail to mention the NLRB Charge, the Board's dismissal of the Charge, and Plaintiff Lucas' ultimate appeal of the dismissal in their Amended Complaint. Further, the NLRB litigation is not integral to Plaintiffs' claims, as it only indicates Plaintiffs' disagreement with the arbitration's outcome and does not relate to the substance of their grievances. Therefore, the court will not consider exhibits E, F, and G. And finally, the court considers the Declaration of Lester Grant only to the extent it identifies Exhibits A, B, C, D, and H.

## B. Plaintiff's Federal Law Claims

### 1. Plaintiffs Fail to Plead Unpaid Overtime Compensation Claim Under FLSA

We know from the Arbitration Decision, ECF No. 15-6, the contract issue was resolved. The arbitrator ruled the mileage rate included the start and finish work, and this work is not separately compensable absent a side agreement. Of course, this court is bound by that ruling as to that issue. But Plaintiffs are entitled to seek redress for FLSA violations if they can state a plausible claim.

Despite the low threshold required to survive dismissal, Plaintiffs simply do not state a plausible overtime claim under FLSA. Section 207 of FLSA provides

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or the production of goods for commerce, for a workweek longer than forty hours *unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.*

---

[4] The court also takes judicial notice of the Arbitration Decision. Because its accuracy cannot be reasonably questioned, as it included the participation of both parties, any dispute as to its existence is unreasonable. *See* Fed. R. Evid. 201(b).

29 U.S.C. § 207(a)(1) (emphasis added).

To establish a successful claim for uncompensated overtime wages, "a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his . . . employer failed to pay the requisite overtime premium for those overtime hours." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). The Fourth Circuit explained this requires "more than merely alleg[ing] that they regularly worked in excess of forty hours per week without receiving overtime pay" but cautioned plaintiffs are not required "to identify a *particular* week in which they worked uncompensated overtime hours." *Id.* (internal citations omitted).

Specifically, Plaintiffs "'must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.'" *Id.* (quoting *Nakahata v. N.T.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)). To meet this standard, Plaintiffs can estimate "the length of [their] average workweek during the applicable period and the average rate at which [they were] paid, the amount of overtime wages [they] believe [they are] owed, or *any other facts* that will permit the court to find plausibility." *Id.* (quoting *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014), *cert denied*, 575 U.S. 979 (2015).

Though Plaintiffs style their claim as one for unpaid overtime, they merely restate the elements of an overtime claim under FLSA. *See* [ECF No. 1-1, ¶¶ 30–32]. The facts on which they base their unpaid overtime claim do not indicate a true challenge to unpaid overtime. Instead, the facts suggest they seek payment for non-hourly work for which they are compensated on a mileage

basis. Plaintiffs allege Defendant "has engaged in a pattern and practice of not paying its drivers" for the following duties:

> (1) [T]he drivers' start work time, which includes the first half hour of each workday with duties including building the loads and pre-staging the loads that will be delivered by the drivers, and (2) the conclusion of work time when the drivers return to the facility and are required to perform an end of shift work routine, including completion of the mileage sheet and turning it in to the dispatch office, which is required daily.

*Id.* ¶¶ 9, 10. The only other fact related to this unpaid work is "Defendant still requires the Plaintiffs to punch in with a timeclock and perform services for the benefit of Defendant and yet not pay [them] wages for those mandatory duties." *Id.* ¶ 11.

Not only do these facts fail to establish a plausible overtime claim under FLSA, they clearly indicate a rehashing of ***the same*** arguments rejected by the arbitrator in his decision. Indeed, the arbitrator clearly outlined the basis of the Plaintiffs' grievance:

> This grievance involves certain drivers at the Columbia Air Hub who are paid on a mileage basis for their driving time. They claim that they should receive separate additional pay on an hourly basis for other parts of their work. The Company agrees with the Union that some work outside of driving time such as shifting, fueling, and washing must be, and already is, paid at the hourly rate. The remaining disputed work is referred to as ***start work and finish work, mainly pre-trip and post-trip inspections***.

[ECF No. 15-6, p. 10 (emphasis added)]. The arbitrator ultimately decided, absent a side agreement or past practice, Plaintiffs were appropriately paid under "the Article 43 Guidelines making start and finish work compensable under the mileage rate for Premium Service Drivers." *Id.*; *see also* [ECF No. 15-5, p. 4 ("Pre-trip, post-trip inspection, start and finish shall be part of the applicable mileage rate.")]. Plaintiffs do not even acknowledge they are paid a mileage rate in their Amended Complaint and, instead, superficially assert Defendant does not compensate them for this work. Again, this court is bound by the arbitrator's decision on this issue, and he ruled Plaintiffs *are* paid

for this work. Consequently, because Plaintiffs actually base their overtime claim on the *manner*

in which they *are paid* under the CBA, and not on facts suggesting they worked overtime hours

for which they *were not paid*, the court **GRANTS** Defendant's dismissal motion with respect to

this claim.

### 2. Plaintiffs Fail to Plead Retaliation Claim Under FLSA

Plaintiffs' retaliation claim also fails to survive dismissal. Section 215 of FLSA makes it

unlawful for any person

> (3) to discharge or in any other manner discriminate against any employee because
> such employee has filed any complaint or instituted or caused to be instituted any
> proceeding under or related to this chapter, or has testified or is about to testify in
> any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C. § 215. To establish a prima facie case of retaliation, Plaintiffs "must show that (1) [they]

engaged in activity protected by the FLSA; (2) [they] suffered adverse action by the employer

subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists

between the employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.*,

515 F.3d 334, 340 (4th Cir. 2008) (citing *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th

Cir. 2000)). Internal complaints may constitute protected activity so long as they are "sufficiently

clear and detailed for a reasonable employer to understand it, in light of both content and context,

as an assertion of rights protected by the statute and a call for their protection." *Minor v. Bostwick*

*Lab'ys, Inc.*, 699 F.3d 428, 439 (4th Cir. 2012) (quoting *Katsen v. Saint-Gobain Performance*

*Plastics Corp.*, 563 U.S. 1, 14 (2011)). The court assumes without deciding Plaintiffs have

adequately pleaded the second and third elements of their retaliation claim. However, the court

finds that Plaintiffs fail to plausibly allege their union grievances constituted protected activity

under FLSA.

Again, Plaintiffs must plead enough facts to plausibly suggest their grievances constituted protected activity under FLSA. Other than "seeking correct wage payment," Plaintiffs provide no details concerning the subject matter of their grievances. Indeed, the only facts relating to the contents of Plaintiffs' grievances come from the Arbitration Decision: "This grievance involves certain drivers . . . who are paid on a mileage basis for their driving time. They claim that they should receive **separate additional pay** on an hourly basis for other parts of their work." [ECF No. 15-6, p. 10]. And therein lies the problem. Plaintiffs' grievances at arbitration centered around a dispute with the CBA's compensation provisions, and now, in their Amended Complaint, they offer nothing but the same facts to support an FLSA claim. The court **GRANTS** Defendant's dismissal motion finding Plaintiffs failed to state a plausible retaliation claim. *See Katsen*, 563 U.S. at 14 ("To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected **by the statute** and a call for their protection.") (emphasis added).

### B. Plaintiff's State Law Claims

In their Amended Complaint, Plaintiffs bring three claims pursuant to South Carolina state law. First, Plaintiffs argue that Defendant violated their rights under the South Carolina Payment of Wages Act. [ECF No. 1-1, ¶¶ 40–45]. Second, Plaintiffs bring a promissory estoppel claim for damages, including "proper income and reimbursements, back pay, lost retirement contributions and accrual, future damages, and any other economic or equitable remedies available, including but not limited to specific performance and reclassification of the position." *Id.* ¶¶ 25–29, p. 8. Last, Plaintiffs bring a quantum meruit claim requesting damages including the "full value of the services rendered by [them] from the time when [they] began such unpaid morning duties, to

include lost income and reimbursements, back pay, lost retirement contributions and accrual, future damages, and pre-judgment interest." *Id.* ¶¶ 30–34, pp. 8–9.

Defendant argues all three of these state law claims are preempted by Section 301 of the LMRA. The court agrees.

### 1. Section 301 of the LMRA Preempts Plaintiffs' SCPWA Claim

Plaintiffs bring a claim under SCPWA alleging that "Defendant required Plaintiffs to work 'off the clock,' and did not pay them for all services rendered for the benefit of Defendant." [ECF No. 1-1, ¶ 42]. Plaintiffs further allege "defendant failed to pay [them] for time worked, which they are entitled to receive in a timely fashion in the next paycheck after the hours were worked, as required by S.C. Code Ann. § 41-10-40 and -50." *Id.* ¶ 43. Defendant argues this claim "is preempted by Section 301 of the LMRA." [ECF No. 15-1, p. 16].

Section 301 of the LMRA provides "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court in the United States having jurisdiction of the parties" without regard to the requirements of diversity jurisdiction. 29 U.S.C. § 185. The Supreme Court has determined that, in addition to granting subject matter jurisdiction, Section 301 provides federal courts a duty to develop a federal common law of labor rights. *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994) (citing *Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448, 455–56 (1957)). As a result, courts often find state law claims preempted because of the primacy of federal labor law.

However, Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law," and "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . that decides whether a state cause of action may go forward." *Livadas*, 512 U.S. at 123. When the state cause of action

16

"requires the interpretation of a collective-bargaining agreement" it is preempted by Section 301. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988). The Supreme Court clarified *Lingle's* holding in *Livadas*. Section 301's preemptive reach extends to state law claims where the meaning of a contract term is the subject of dispute but not simply when "a collective-bargaining agreement will be consulted in the course of state-law litigation[.]" *Livadas*, 512 U.S. at 124. The Fourth Circuit recognized that *Livadas* directs a court to start with the legal character of the state law claim before determining preemption. *See Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 773 (4th Cir. 1998).

The court starts by determining the legal character of Plaintiffs' SCPWA claim. Plaintiffs allege Defendant failed to pay them wages for time they were required to work "off the clock." [ECF No. 1-1, ¶ 42]. The SCPWA provides employers shall "pay all wages due." S.C. Code Ann. § 41-10-40; *see also* S.C. Code Ann. § 41-10-50 (requiring employers to "pay all wages due" to terminated employees). The SCPWA defines wages as "all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of [calculation] and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract." S.C. Code Ann. § 41-10-10. The SCPWA provides a private cause of action for an employee when an employer fails to "pay wages due . . . as required by Section 41-10-40 or 41-10-50." S.C. Code Ann. § 41-10-80. This private cause of action allows employees to recover "an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow." *Id.*

Essentially, Plaintiffs' claim for unpaid wages is based on their allegation that Defendant fails to pay them for work performed at the start of their day relating to the staging and loading of their

trucks and work at the end of their day including completing and turning in their milage sheet. [ECF No. 1-1, ⁋ 10]. To prove their claim, Plaintiffs must show what wages they were due, which is directly governed by the parties' CBA. Not only does this require more than a bare consultation to the CBA, but it also calls a number of its provisions into dispute.

The Fourth Circuit dealt with a strikingly similar issue in *Barton v. House of Raeford Farms Inc.*, 745 F.3d 95 (4th Cir. 2014). The plaintiffs in *Barton* constituted former and current employees of the Columbia Farms chicken plant in Greenville, South Carolina. *Id.* at 99. Just like the Plaintiffs in this case, the chicken plant employees were paid pursuant to a collective-bargaining agreement with United Food and Commercial Workers' Union, Local No. 1996, CLC. *Id.* The Fourth Circuit described the plaintiffs' cause of action under the SCPWA as "based on their claim that Columbia Farms owed them unpaid wages resulting from its failure to count their hours in accordance with the employment contracts that were based on what Columbia Farms told them when they were hired and that stood separate and apart from the CBA." *Id.* at 106. The claim arose because the employees argued their wages should be based on the entire time they spent at work, including the donning and doffing of protective gear, rather than based on "line time" which is "the time actually spent by employees processing chickens on the production line." *Id.* at 100.

The Fourth Circuit found the *Barton* plaintiffs' theory untenable because "[a]ny wages owed to the plaintiffs in this case were necessarily those agreed to in the CBA negotiated between the Union and Columbia Farms." *Id.* at 106. And, just as here, the terms of that collective-bargaining agreement specifically spelled out the parameters governing wages, i.e., the length of employees' workday, the length of employees' work week, the amount of break time each employee was entitled to, etc. *Id.* The Fourth Circuit concluded by saying "[it] is therefore apparent that the plaintiffs' claims under the S.C. Wages Act are nothing other than a disagreement with Columbia

Farms' interpretation of how to calculate their 'hours worked' under the CBA[.]" *Id.* Accordingly, the Fourth Circuit held that Section 301 preempted the employees' state law claims "because of the CBA's terms and the supremacy of federal law that provides for the CBA's enforcement." *Id.*

Just as in *Barton*, Plaintiffs here are subject to a collective-bargaining agreement between Defendant and their Union that governs the terms of their compensation. As the court noted above, to prove their claim Plaintiffs would have to show they are due wages for which they did not receive compensation. Such a dispute necessarily involves the interpretation (not mere consultation) of the CBA. Accordingly, the court finds that Section 301 of the LMRA clearly preempts Plaintiff's SCPWA claim. Therefore, the court **GRANTS** Defendant's dismissal motion and **DISMISSES** Plaintiffs' SCPWA claim.

### 2. Section 301 of the LMRA Preempts Plaintiffs' Remaining State Law Claims

Similarly, the court finds Plaintiffs' two state common law claims for recovery are also preempted by Section 301 of the LMRA.

In South Carolina, "[p]romissory estoppel is a quasi-contract remedy." *N. Am. Rescue Products, Inc. v. Richardson*, 769 S.E.2d 237, 241 (S.C. 2015) (citing *Higgins Constr. Co. v. S. Bell Tel. & Tel. Co.*, 281 S.E.2d 469, 470 (S.C. 1981)). To make out a successful promissory estoppel claim, Plaintiffs must show "(1) an unambiguous promise by the promisor; (2) reasonable reliance on the promise by the promisee; (3) reliance by the promisee was expected by and foreseeable to the promisor; and (4) injury caused to the promisee by his reasonable reliance." *Id.* (citing *Davis v. Greenwood Sch. Dist.*, 620 S.E.2d 65, 67 (S.C. 2005)).

Furthermore, South Carolina law provides that "[q]uantum meruit is an equitable doctrine which allows recovery for unjust enrichment under a quasi-contract theory." *Stevens and Wilkinson of S.C., Inc. v. City of Columbia*, 762 S.E.2d 696, 703–04 (S.C. 2014) (citing *Columbia*

*Wholesale Co. v. Scudder May N.V.*, 440 S.E.2d 129, 130 (S.C. 1994)). "The elements of a quantum meruit claim are: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value." *Id.* at 704 (quoting *Earthscapes Unlimited, inc. v. Ulbrich*, 703 S.E.2d 221, 225 (S.C. 2010)).

Plaintiffs base both of these claims on Defendant's alleged failure to compensate them for time they worked off the clock. *See* [ECF No. 1-1, p. 8, ⸿ 26 ("Defendant made an unambiguous promise to pay the Plaintiffs for required work time. This promise is evidenced by the labor manager's statements and the rare occasions that Defendant has paid the required work time over the last three years.")]; *see also* [ECF No. 1-1, p. 9, ⸿ 31 ("Defendant has received the benefit of Plaintiffs performing duties daily including for time that was worked but remains unpaid.")].

However, as the court discussed above, the agreements (or promises) to pay Plaintiffs are exclusively governed by the CBA. To prove their claims under either of these equitable theories, Plaintiffs must show the disputed compensation provisions of the CBA establish: (1) Defendant breached its promise to pay Plaintiffs, and (2) Defendant retained an unjust benefit from Plaintiffs' allegedly uncompensated work. Because the CBA is in actual dispute, Section 301 of the LMRA preempts these state law claims. Accordingly, the court **GRANTS** Defendant's dismissal motion and **DISMISSES** Plaintiffs' remaining state law claims.

**CONCLUSION**

For the foregoing reasons, Defendant UPS's Motion to Dismiss, ECF No. 15, is **GRANTED** and all of Plaintiffs' claims are **DISMISSED**.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

September 2, 2022
Columbia, South Carolina